UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | No. 3:16cr100 (JAM) |
| v. | : | |
| | : | September 19, 2017 |
| MACKENZY NOZE | : | |

**<u>DEFENDANT NOZE'S MEMORANDUM IN AID OF SENTENCING</u>**

Mackenzy Noze is a "great guy, who has been through a lot." That is how Mr. Noze is described by his brother, Frantzy, assistant soccer coach at Plattsburgh State University of New York, an NCAA Division III college soccer program. He stated that his brother is not the same person he was when they moved to the United States from Haiti. He added that his brother "… is not in the right state of mind. He's slower now to process things" (PSR Par. 51). Mackenzy Noze experienced a strained relationship with his father, who was "verbally abusive and mean toward him as a child." (PSR Par. 48) He has a good relationship with his mother (PSR Par. 49), notwithstanding that she appears to have left him with his grandfather, Antoine Baptiste, to raise until he was at least 12. "He described life as hard and recalled eating one shared meal per day with Mr. Baptiste. He stated he lived far from school and a clean water source." (PSR Par. 43) Yet, he is understanding of his mother's apparent inability to deal with him, given her youth at his birth (PSR Par. 49).

He began consuming alcohol at age eight or nine and Percocet at age 26. Reporting daily use of each, "With regard to alcohol, Mr. Noze informed he typically drinks until he passes out. He also noted that he also consumes Percocet, when available, with alcohol. Mr. Noze stated he began using drugs and alcohol recreationally with his peers and that his use eventually became an addiction issue." PSR Pars. 57, 58)

Still, Mr. Noze graduated in 2003 from Norwich Free Academy (PSR Par. 66). He has an exceptional employment record (PSR Pars 66 to 77) in comparison with that of many defendants who appear before this court. Indeed, while on pre-trial release, he was employed under the supervision of USPO Nicole Owens. Also, while on pretrial release, he was present for every required court appearance, even appearing in court for conferences not requiring his presence. During trial he appeared, early, every day that court was in session.

PSR Paragraphs 7 and 54 address the "fake Facebook" posting that produced his arrest, without prior notice, while he was on pre-trial release. The PSR correctly notes that the court released him, that day, for lack of clear and convincing evidence that he was the perpetrator of the Facebook posting. The court will recall that Mr. Noze presented evidence at the hearing that, days earlier, he had reported to both his probation officer and his attorney that others had brought to his attention that someone had impersonated him on Facebook, obviously intending to harm him in connection with the case. He also immediately cooperated with the government in an effort to identify the perpetrator. He was convinced that the likely culprit was Ms. Singer (as explained in the PSR) and identified her to the government. Undersigned counsel has no reason to believe that the government's subsequent inquiry produced a different conclusion. Mr. Noze respectfully urges the court to be mindful of these facts as it contemplates the relevance of the information contained in PSR paragraph 35 (prior arrest involving domestic incident involving Ms. Singer).

## SENTENCING GUIDELINE ANALYSIS

**I. ROLE**

The PSR reports that the government seeks a four-point role adjustment, describing Mr. Noze as "the ringleader" of a group of individuals who deliberately staged

automobile crashes. The totality of the evidence disclosed by the government, however, including pre-trial disclosures, demonstrates that, at best, there were many persons known to the government to be engaging in staged car crashes. Among the individuals over which Mr. Noze is alleged to have exerted an organizational role are one or more defendants in this case who were prolific in acting on their own, without Mr. Noze.

A determination that the defendant is a leader, organizer, manager, or supervisor "'involves a legal interpretation of the Guidelines and is reviewed de novo'" U.S. v. Wisniewski, 121 F.3d 54, 57-58 (2d Cir. 1997). The sentencing court must make "specific factual findings" to adjust a defendant's sentence for an aggravating role in the offense. U.S. v. Stevens, 985 F.2d 1175, 1184 (2d Cir. 1993). A failure to make the specific findings necessary for a role adjustment constitutes plain error. See U.S. v. Carter, 489 F.3d 528, 540 (2d Cir. 2007).

There is no basis for a four-point adjustment for organizer or leader pursuant to USSG § 3b1.1(a).

## II. LOSS CALCULATION

The government attributes to Mr. Noze losses exceeding $550,000. It does so by "estimating", based on the lone claim by Carlins Calixte that Mr. Noze told him that he had been involved in "40-50" crashes. Even if Mr. Noze had spoken those words, there is no evidence that said crashes occurred or that Mr. Noze was involved. Since Mr. Calixte disavowed any participation in other crashes (assuming they did occur), they were not acts in furtherance of the charged conspiracy. Even if they did occur, there is no evidence as to when or how, they occurred, or whether insurance claims were made or paid, which renders the allegations so amorphous as to implicate other challenges, including, inter alia: the statute of limitations.

As to the government's attribution to Mr. Noze' of losses stemming from 40-50 alleged staged crashes, it is not calculating loss by estimating an average payment for "known" transactions, but engaging in "pure speculation" See <u>U.S v. Deutsch</u>, 987 F.2d 878, 886 (2d Cir. 1993)

The loss attributable to Mr. Noze, at most, should be limited to the $207,083.36 identified by the Probation report as subject to a restitution order in PSR Par. 91.

### III. GUIDELINE CALCULATION

Defendant Noze respectfully submits that the following guideline calculation is the appropriate basis for sentencing consideration. Pursuant to U.S.S.G. § 2B1.1, the base offense level is 7, increased by 10 where the loss is greater than $150,000 (§2B1.1(b)(1)(F)) for an adjusted offense level of 17. A Criminal History Category of III would yield a sentencing range of 30 to 37 months.

### IV. DISPARITY IN SENTENCING

One of the principal bases for the promulgation of the United States Sentencing Guidelines was the elimination of sentencing disparity (18 U.S.C. 3553 (a)(6)). The PSR notes that Mr. Noze exercised his constitutional right to put the government to its burden. While Mr. Noze is not privy to the bases for all of the sentences imposed in this case, he notes that the range identified above calls for a sentence which is exponentially greater than that imposed on the sentenced defendants identified in PSR Par. 3. Defendant Noze respectfully urges the court, therefore, to fashion a non-guidelines sentence which fairly corresponds with the sentences imposed on others in this case.

### V. 500 HOUR DRUG TREATEMENT PROGRAM

Given the history of substance abuse identified in the PSR, Mr. Noze respectfully requests that the court consider recommending that he be considered for the 500-Hour Drug Treatment Program.

Respectfully submitted,
DEFENDANT MACKENZY NOZE

      /s/ Robert J. Sullivan, Jr.
By_____
  Robert J. Sullivan, Jr.
  LAW OFFICES OF ROBERT SULLIVAN
  190 Main Street
  Westport, Connecticut 06880
  Tel. No. 203/227-1404
  Federal Bar No. CT08969

**CERTIFICATE OF SERVICE**

   I hereby certify that on September 19, 2017, a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system, or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

              /s/ Robert J. Sullivan, Jr.
              _____
               Robert J. Sullivan, Jr.